### WALLACE et al. v. WORLD FIRE & MARINE INS. CO. OF HARTFORD, CONN.

#### No. 5814–BH.

District Court, S. D. California, Central Division.

Feb. 19, 1947.

194

George Penney, of Los Angeles, Cal., for plaintiffs.

Hindman & Davis, of Los Angeles, Cal., for defendant.

HARRISON, District Judge.

This is an action for the recovery of a fire loss occurring under a "provisional reporting policy" issued by the defendant insurance company, covering a stock of merchandise of fluctuating value. The policy was for a term of one year commencing at noon on December 31, 1945. It succeeded an almost identical policy. The ·fire occurred February 14, 1946.

This case was submitted to the court on an agreed statement of facts. The dispute between the' parties revolves around an interpretation of this type of policy.

The first policy was taken out in December, 1944, 'for the provisional amount of Twenty Thousand Dollars ($20,000), and a premium of One Hundred Ninety-Two Dollars ($192) was paid. Before the effective date, the provisional amount was reduced to Fifteen Thousand Dollars ($15,-000), and Forty-Eight Dollars ($48) of the premium was returned. The limit of liability stated was Thirty Thousand Dollars ($30,000). During 1945, plaintiffs reported an average value of only Four Thousand Dollars ($4,000), although the true value averaged Twenty-Five Thousand Four Hundred and Sixty-Three Dollars ($25,-463). At the end of the year, the total premium due at ninety-six cents per One Hundred Dollars' ($100) insured was only Thirty-Eight Dollars and Forty Cents ($38.40), on the basis of the values reported by plaintiffs, so all of the deposit premium in excess of One Hundred Dollars ($100) was returned to them.

In December, 1945, the new policy was executed at the same rate. The provisional amount was Four Thousand Four Hundred Dollars ($4,400). The limit of liability was set at Fifteen Thousand Dollars ($15,000). The policy was in all other respects identical in terms with the first policy, except that the provisional premium paid was only One Hundred Dollars ($100), instead of One Hundred and Forty-Four Dollars ($144). The policy covered the insured property

from noon, December 31, 1945, until noon, December 31, 1946.

On January 3, 1946, the plaintiffs reported that the property insured was worth Two Thousand Dollars ($2,000) as of December 31, 1945. The actual value at that time was Twenty-Eight Thousand One Hundred and Forty Dollars ($28,140). On February 14, 1946, a fire occurred on the insured premises causing a loss of Twenty-Seven Thousand Two Hundred and Fifty-Three Dollars ($27,253). On February 26, 1946, plaintiffs reported that the true value at the time of the fire was Twenty-Nine Thousand Six Hundred and Twenty-Five Dollars ($29,625). On March 29, 1946, they reported that the property was worth Twenty-Nine Thousand Dollars ($29,000) on January 31, 1946, and Twenty-Nine Thousand Dollars ($29,000) on February 13, 1946, the day before the fire. On August 16, 1946, they filed a proof of loss with the defendant, claiming Thirteen Thousand Seven Hundred and Ninety-Eight Dollars and Fifty Cents ($13,798.50), as their recovery under the policy. Defendant admitted the amount of the loss but denied that any recovery was due. Plaintiffs sued for the above amount, plus 7% interest from the date of the fire.

The premium due under this policy is subject to variation with variations in the coverage. A deposit premium paid at the beginning is to be adjusted thereafter according to the value of the property at risk from month to month. At the end of the term, the monthly values are averaged and the premium calculated. If the premium based on the averaged values at the termination of the policy exceeds the deposit premium, the insured pays the excess, if less, the insurer refunds the difference in excess of the minimum premium of One Hundred Dollars ($100).

To determine the value of the property at risk, the insured must make a monthly report of values, according to the terms of the "value reporting clause" (Paragraph 8):

"(A) It is a condition of this policy that the insured shall report to this company on the last day of each month of the policy term the exact location of all property covered hereunder, the actual cash value of such property at each location and the amount of specific insurance in force at each location, all as of the last day of that month. However, a grace period of thirty (30) days shall be allowed for compilation and submission of such reports to this company.

"(B) If at the time of any loss, the insured has failed to file with this company, reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss; and further, if such delinquent report is the first report of values as required to be filed, this policy shall cover only at the locations specifically named herein."

The policy contains a "full reporting clause" or "honesty clause" (paragraph 9), so drawn that if the insured declares his property at a figure below its actual value, his recovery is limited to such proportion of the loss as the value declared bears to the actual value of the property. When he diminishes his premium, he diminishes his potential recovery. This paragraph also prevents an unjust recovery based on an over-evaluation of the property, by means of a formula not material to the issues in this case.

The plaintiffs contend their recovery should be based upon the reported value of Twenty-Nine Thousand Six Hundred and Twenty-Five Dollars ($29,625), which they contend was reported within the thirty day grace period. The defendant, on the other hand, contends the policy is void due to a material misrepresentation, or in the alternative, that the plaintiffs are bound by their representation of January 3, 1946, and in that event, plaintiffs' recovery should be based upon a valuation of Two Thousand Dollars ($2,000).

Taking up the plaintiffs' contention first, it will be noted they are basing their claim upon values reported after the loss occurred. This approach would be contrary to, and in direct conflict with, subdivision (B) of paragraph 8 of the policy heretofore quoted. A reading of this sec-

tion indicates that the period of grace for the filing of reports of values under no circumstances extends to a time after the fire loss, even if it is assumed that the thirty day grace period had not expired. However, strict enforcement of such a provision would preclude recovery under a new policy until an evaluation had been made, and it has been held in cases dealing with similar policies that where the loss occurs before a required inventory is taken, but within the grace period, or where no grace period is provided, within a reasonable time, an inventory or report made after the loss is sufficient upon which to base recovery. National Liberty Insurance Co. v. Norman, 4 Cir., 11 F.2d 59; Schenley Distillers Corporation v. United States Fire Ins. Co., 2 Cir., 90 F.2d 633.

In following through plaintiffs' contention, it is necessary to determine whether or not the thirty day grace period had expired.

A policy takes effect from its date, unless it be otherwise stated. Union Ins. Co. v. American Fire Ins. Co., 107 Cal. 327, 40 P. 431, 28 L.R.A. 692, 48 Am.St.Rep. 140. The policy was effective in December, 1945. A report of values was due on the last day of each month of the policy term, so a report of values was due under the new policy, as well as on the old policy, on December 31, 1945. If it be argued that no report could be expected since the policy covered only one day in the month of December, this departure from the express words of the contract would put us in the difficult position where we must determine how and where to draw the line. Would a report be due if the effective date were December 30, or December 20, or December 16? Must the policy have been effective a week, or half a month, or the whole month? The words of the policy are clear and unambiguous in this regard—under the new policy a report was due on December 31, 1945.

Plaintiffs' report of January 3rd was within the terms of paragraph 8 (A), and since they made no other report during January, the conclusion is inescapable that the single report covered both the old and the new policies. They stated that the property was worth Two Thousand Dollars ($2,000) on December 31, 1945. If it was worth Two Thousand Dollars ($2,000) under the old policy on that day, it was worth no more under the new one. They cannot blow cold when their figures are to be used to compute premiums, and blow hot when they are to be relied on to compute the company's liability. The mere circumstance that the report they made was also within the terms of the old policy, which was a separate and distinct contract, does not alter the fact that it was within the terms of the new policy. To hold otherwise would enable the plaintiffs to profit by their own wrong, and would void the policy as hereinafter discussed.

If plaintiffs' contention that the January 3rd report was not made under the new policy is accepted, they are in complete default, since the thirty day grace period expired on January 30, 1946. Where there has been no evaluation at all, and a definite period is set within which to state the value; a failure by the insured to comply with the requirement is sufficient ground, for the insurer to avoid all liability. Royal Insurance Co., Limited, of Liverpool, England v. Kline Bros. & Co., 2 Cir., 198 F. 468; Istrouma Mercantile Co. v. Northern Assurance Co., 183 La. 855, 165 So. 11.

Even if the statement of falsely low values would not be grounds for avoidance when the insurer protects himself with an "honesty clause" and does not rely on its accuracy, nevertheless *some* figure must be given in order to create a base for calculating the liability after loss, and to adjust premiums. It is material that the declaration of values be within the period of grace, for if the insured could wait until the risk was past, and then understate the value of the property which had been subject to the risk, he would get the benefit of full coverage with an unjustly low premium. Atlantic Fruit Co. v. Hamilton Fire Ins. Co., 251 N.Y. 98, 167 N.E. 184; cf. Rivaz v. Gerussi Bros., 6 Q.B.D. 222, 50 L.J.N.S. 176.

Although an ambiguous insurance policy must be interpreted most strongly against the insurer, Fritz v. Metropolitan Life Ins. Co., 50 Cal.App.2d 570, 123 P.2d 622, we

cannot create an ambiguity where none exists. American National Bank v. Service Life Ins. Co., 7 Cir., 120 F.2d 579, 137 A.L.R. 1148; Guarantee Co. of North America v. Mechanics' Savings Bank & Trust Co., 183 U.S. 402, 22 S.Ct. 124, 46 L.Ed. 253. By no stretch of the imagination can the February report be brought within the terms of the phrase "the last report of values filed *prior to the loss.*" It was filed after the loss. The only report of values filed prior to the loss was filed on January 3, 1946.

■■ Passing now to the contention of the defendant to the effect that the policy is void due to a material misrepresentation or concealment of values: If the representations or concealments are material, then of course the policy is void. Gates v. General Casualty Co., 9 Cir., 120 F.2d 925; Strangio v. Consolidated Indemnity & Insurance Co., 9 Cir., 66 F.2d 330. But the misrepresentation must be material to the risk, or the rights and liabilities arising from the contract. It must be such that "it would have influenced the underwriter 'either not to underwrite at all, or not to underwrite, except at a higher premium.'" Hare & Chase, Inc. v. National Surety Co., D.C., 49 F.2d 447, 456, 457; Transcontinental Ins. Co. v. Minning, 6 Cir., 135 F.2d 479, 481.

■ Under the second policy, the plaintiffs reported a value only one fourteenth of the true worth of the insured property. But if the insurer had known this would it have acted differently? The policy is so drawn that any understatement of value limits the recovery, without a proportionate saving in premiums. For instance, under the old policy the premium rate was ninety-six cents per One Hundred Dollars ($100) insured. Since the minimum premium was One Hundred Dollars ($100), plaintiffs paid at the rate of Two Dollars and fifty cents ($2.50) per One Hundred Dollars ($100) insured by stating an average value of Four Thousand Dollars ($4,000). The defendant received a premium two and one-half times as large as was earned by the risk assumed. If the plaintiffs state Two Thousand Dollars ($2,-000) as the value, they must pay a premium at the rate of Five Dollars ($5) per One Hundred Dollars ($100) insured. Only the insurer can profit by the insured's choosing to bear such a large part of the risk, and no insurer would rescind a policy under these circumstances. I find that the understatement was immaterial. Jeffords v. Tokio Marine & Fire Ins. Co., 123 S.C. 467, 117 S.E. 79, 81.

If the under-evaluation during the term of the new policy is immaterial, it is even less material that plaintiffs understated values under the old one. The California Insurance Code, § 334, in treating with negotiations before the execution of the contract, provides:

"Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."

No disadvantageous fact was concealed from the defendant. It gained by plaintiffs' understatements. Counsel suggests that had the company known the actual value of the property, it would have demanded and received a larger deposit premium. But the plaintiffs' course of conduct in 1945, in declaring low values, would have indicated that the premium of One Hundred Dollars ($100) already received was going to be more than adequate for 1946. There was no reason to demand more.

Rivaz v. Gerussi Bros., 6 Q.B.D. 222, 50 L.J.N.S. 176, on which the defendant relies strongly, did not present the same problem as we have here. In that case, under a prior policy the insured had waited until after the risk had passed before stating the value of the merchandise covered; then he stated a falsely low value to obtain a low premium rate. This was a clear breach of trust since he actually owed a larger premium. A material misrepresentation under a prior connected policy is sufficient to void the policy sued on. Solomon v. Federal Ins. Co., 176 Cal. 133, 167 P. 859; Eddy v. National Union Indemnity Co., 9 Cir., 78 F.2d 545, Id., 9 Cir., 80 F.2d 284; Sun Ins. Co. v. Roy [1927] 1 D.L.R. 17, 62 A.L.R. 818. But where the

misrepresentation or concealment is immaterial, it does not create grounds for rescission or avoidance. In the present case an understatement does not breach the trust since the insurer is unharmed. The representation is of no importance to the insurer, except to calculate the premiums due at the end of the year. The insurer has committed himself to accepting a fluctuating scale of values but is protected by the "honesty clause" whatever value is declared.

■ I therefore find that the plaintiffs are entitled to recover upon the basis of their report of January 3, 1946.

Counsel for plaintiffs is directed to submit forthwith proposed findings and judgment in accordance with this opinion.