E. D. Baird & Son, Appellee, v. Kaskaskia Live Stock Insurance Company, Appellant.

PARTIES: Defendants—Assumptor of Contract. An insured, in case of loss, may maintain an action against an insurance company which has, by contract, taken over and assumed the obligation of the original insurer.

INSURANCE:  Conditions Subsequent—When Violation Immaterial.  In
2   an action against a company which had taken over and assumed a
    contract of insurance on stock, the failure of the insured to notify
    the original insurer of the sickness of an animal becomes immaterial
    when it appears that such failure did not contribute to the loss.

*Appeal from Iowa District Court.*—RALPH OTTO, Judge.

NOVEMBER 11, 1924.

ACTION at law, to recover damages for the loss of an Angus
bull.  The policy insures against loss by death by disease or
accident.  There was a trial to a jury, and verdict and judgment
for plaintiff.  Defendant appeals.—*Affirmed.*

*Havner & Powers,* for appellant.

*W. E. Wallace,* for appellee.

PRESTON, J.—1.  The main argument of appellant, and its
main contention on this appeal, is that plaintiff may not main-
tain the action as against this defendant because there is no
privity of contract between plaintiff and defendant.

Plaintiff first took out a policy of insurance with the Farm-
er's Live Stock Insurance Company, of Des Moines, insuring the
bull against loss as stated.  Later, and within the term of the
policy, that insurance company entered into a reinsurance contract as to certain of its live-stock business, with the defendant, of Shelby-
ville, Illinois.  The contract was approved by the proper authori-
ties.  It provides in part:

1. PARTIES: de-
fendants: as-
sumptor of
contract.

"In consideration of the agreements hereinafter made by
the party of the second part [this defendant] party of the first
part hereby agrees to transfer and turn over to party of the
second part such of its insurance risks covering cattle and
horses which it may have in force at the time of the going into
effect of this contract (and which is included in an itemized list
of said business showing each separate policy or risk, etc.) * * *
Party of the first part agrees to pay second party as full com-

pensation for taking over the above described risks, the sum of $11,000 in cash, * * * In consideration of the above, party of the second part agrees to take over and *assume* all losses that may occur on said cattle and horse risks as above described. * * * The parties hereto mutually covenant and agree, each with the other, to send as soon as the contract is finally approved, a joint postpaid letter to all the agents and the policyholders, whose risks are hereby transferred, of the Farmer's Live Stock Insurance Co., notifying the same of the transfer of the horse and cattle business of the Farmer's Co., to the Kaskaskia Co.''

It was agreed that the policy sued upon was one of the policies covered by the contract.

Appellant relies largely upon the case of *Globe Nat. Fire Ins. Co. v. American Bonding Co.*, 198 Iowa ——, which was decided by this court after the trial of the instant case in the district court. The claim by appellant for that decision is that, where there is a mere reinsurance contract, an action may not be maintained against the reinsuring company, for the reason that it is neither a party thereto nor in privity therewith. It is appellee's contention that the reinsurance contract in this case is more than a mere reinsurance, because the defendant herein, under the terms of the contract, took over and assumed the obligations of the original insurer. The cases cited and relied upon in the *Globe* case recognize such a distinction. Among those so holding, see *Barnes v. Hekla Ins. Co.*, 56 Minn. 38 (57 N. W. 314), and *Weil v. Federal Life Ins. Co.*, 264 Ill. 425 (106 N. E. 246), which are directly in point, and sustain appellee's contention. See, also, 14 Ruling Case Law 1453; *Johannes v. Phenix Ins. Co.*, 66 Wis. 50 (27 N. W. 414); *Ruohs v. Traders Fire Ins. Co.*, 111 Tenn. 405 (78 S. W. 85); *Whitney v. American Ins. Co.*, 127 Cal. 464 (59 Pac. 897); 24 Am. & Eng. Encyc. of Law 254, 258, and cases. See, also, *Bartlett v. Fireman's Fund Ins. Co.*, 77 Iowa 155; *Gooden v. Rayl*, 85 Iowa 592; *Hawley v. Exchange State Bank*, 97 Iowa 187; *Getchel & Martin Lbr. Co. v. Peterson*, 124 Iowa 599; *Runkle & Fouse v. Kettering*, 127 Iowa 6; and Section 3459, Code, 1897, as bearing on this proposition.

This disposes of the principal point in the case.

2. The policy contains this provision:

"It is a condition of this policy that you give the stock insured competent veterinary attention when sick, and to notify the company immediately by wire should any animal die or become sick or injured."

It is contended by appellant that, because plaintiff never notified the Farmer's Live Stock Insurance Company concerning the sickness of the bull, it voids the policy, and plaintiff may not recover. It appears that there was a minor operation on the bull in March, 1922. The evidence tends to show that this operation was insignificant, and had nothing to do with the animal's death. The bull took sick with the disease from which it died, April 2, 1922. This was first noticed by one of plaintiff's employees, the herdsman, about 8 or 9 o'clock in the morning of that day. Immediately after he learned of the sickness of the animal, a telegram was sent to Tenney, appellant's state agent, at Des Moines, Iowa, notifying him of the sickness. Tenney was the state agent of this defendant, and is the agent referred to in the insurance contract, and the party to whom inquiries and requests by policyholders were to be made, as provided in the reinsurance contract. Tenney immediately sent a telegram to appellant, notifying it of the sickness of the animal. This was received by appellant on the morning of April 3d, and it sent a telegram to appellee, inquiring for particulars. Plaintiff received the telegram from appellant about 3 o'clock in the afternoon of April 3d. The bull died that afternoon. Immediately thereafter, plaintiff sent a telegram to appellant at Shelbyville, notifying it of the animal's death.

*2. INSURANCE: conditions subsequent: when violation immaterial.*

The body of the policy contains a provision that the company shall not be liable:

"(a) If an animal herein insured shall become sick or injured and the assured shall fail to notify this company immediately by telegram or telephone, and * * * (d) If sick animals are not immediately segregated," etc.

During the trial, appellant dictated into the record the following waiver:

"Comes now the defendant and waives any right to any

defense as to said policy under the following provisions: [quoting (a) and (d) above set out], and hereby withdraws the allegations concerning said terms in said policy from his answer, and waives any right to any defense under either of said provisions.''

The original policy has been certified, and on the face of it appears a bright red colored paper, with a hand pointing to ''NOTICE. It is a condition of this policy that you give the stock insured competent veterinary attention when sick, and to notify the company immediately by wire should. any animal die or become sick or injured.'' The latter part of this notice is practically the same as the provision above set out in the body of the policy. The colored flyleaf on the front page of the policy was evidently placed there for no other purpose than to forcibly call the attention of the assured to the provisions in the policy.

After appellant had dictated the waiver into the record, it amended its answer, setting up the provision (a) of the policy, before set out, and the notice just quoted, and alleging that plaintiff had not complied with such provisions. It is contended by appellee that the different provisions just referred to are practically the same, and that appellant is bound by the waiver. We are inclined to think that this is so. Furthermore, Section 1743, Code Supplement, 1913, provides that the violation of such a provision in the contract shall not prevent recovery if it shall be shown by plaintiff that a failure to observe such provision did not contribute to the loss. There was evidence on this subject, and the court, by appropriate instructions, submitted the question to the jury, which, by its verdict, must necessarily have found that the failure did not contribute to the loss. As bearing upon this proposition, see Marsh v. Federal Sur. Co., 195 Iowa 1193; Taylor v. National L. S. Ins. Co., 192 Iowa 1118; Krell v. Chickasaw M. F. Ins. Co., 127 Iowa 748. Under the circumstances, it would seem that failure to give notice to the Farmer's Live Stock Insurance Company would not be very material, unless plaintiff was seeking to hold that company instead of appellant, or both of them.

The points discussed are controlling. We discover no prejudicial error in the record, and the judgment is—*Affirmed.*

ARTHUR, C. J., and EVANS and FAVILLE, JJ., concur.